DOLORES I. MOONEY, PLAINTIFF, v. BOARD OF CHOSEN
FREEHOLDERS OF ATLANTIC COUNTY, AND JOHN
XANTHOPOULOS, COUNTY TREASURER, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided January 8, 1973.

*Mr. Morgan Thomas,* for plaintiff.

*Mr. Gerald Weinstein,* Atlantic County solicitor, for defendants.

FRANCIS, J. S. C.   This is an action in lieu of prerogative writs wherein the original complaint challenged the creation of the position of assistant commissioner of registration within the county board of elections. The complaint was amended by adding a supplement wherein plaintiff challenged the actions of the board of freeholders in the creation by resolution of the office of superintendent of elections for Atlantic County.

The matters set forth in the original complaint have been disposed of, leaving as the sole issue to be determined the constitutionality of *N. J. S. A.* 19 :32–26, which purports to authorize the appointment of a superintendent of elections in certain counties.

The most recent amendment to the above statute became effective May 20, 1971. The pertinent portion of the statute is as follows:

> In any county of the second class, other than those having a population between 275,000 and 325,000 and other than those having a population between 350,000 and 400,000 according to the 1950 Census, and in any county of the fifth class having a population in excess of 200,000 according to the 1950 Census, or *less than 200,000 according to the 1970 Census,* the board of chosen freeholders may establish, by resolution, the office of superintendent of elections for the county, and said office when once established shall not be altered or abolished.

The following table, compiled from statistics of the United States Census Bureau, shows the population of certain extracted counties of New Jersey as related to their class, for the census years 1950 and 1970:

| Second-Class Counties (200,000-600,000 | 1970 Census | 1950 Census |
|---|---|---|
| Middlesex | 583,813 | 264,872 |
| Union | 543,116 | 398,138 |
| Passaic | 460,783 | 337,094 |
| Camden | 456,291 | 300,743 |
| Morris | 383,454 | |
| Burlington | 323,132 | 135,910 |
| Mercer | 303,968 | 229,781 |
| Fifth-Class Counties (over 100,000 on Atlantic Ocean) | | |
| Monmouth | 461,849 | 225,327 |
| Ocean | 208,470 | |
| Atlantic | 175,043 | 132,399 |
| Sixth-Class Counties (under 100,000 on Atlantic Ocean) | | |
| Cape May | 59,554 | 37,131 |
| Ocean | | 56,622 |

It is apparent that Atlantic County comes within the amended statute since it complies with that portion of the statute which lends qualification to a county with "less than 200,000 according to the 1970 Census."

■ Constitutionally, the statute as amended is condemned as special legislation, violative of *N. J. Const.* (1947), Art. IV, § VII: "No general law shall embrace any provision of a private, special or local character."

An examination of population classifications, *supra,* in relation to the statute in question indicates that within the fifth-class county classification Monmouth and Atlantic would qualify while Ocean County is forever excluded. In the second-class counties, since the population figures are locked to the 1950 Census, there is a permanent exclusion of Union and Camden Counties. Finally, the sixth-class counties, should they ever become fifth-class counties, could not qualify under the statute.

■ Plaintiff produced evidence of the population figures of the various counties of the State, relying upon argument addressed to those figures and the relationship of the statute

to them. Defendant likewise relied upon oral argument rather than testimony. The essence of plaintiff's argument is that the determining factor is what is excluded under the act rather than what is included. Plaintiff cited *Harvey v. Essex Cty. Board of Chosen Freeholders*, 30 *N. J.* 381 (1959):

> In deciding whether an act is general or special, it is what is excluded that is the determining factor and not what is included. *Budd v. Hancock*, 66 *N. J. L.* 133, 135–136 (*Sup. Ct.* 1901). If no one is excluded who should be encompassed, the law is general. Another requirement of a general law is that it must affect equally all of a group who, bearing in mind the purposes of the legislation, are distinguished by characteristics sufficiently marked and important to make them a class by themselves. In *Van Riper v. Parsons*, 40 *N. J. L.* 1, 9 (*Sup. Ct.* 1878) the court pointed out that local and special laws rest on a false or deficient classification in that "their vice is that they do not embrace all the class to which they are naturally related; they create preference and establish inequalities; they apply to persons, things or places possessed of certain qualities or situations, and exclude from their effect other persons, things or places which are not dissimilar in these respects." See also *City of Passaic v. Consolidated Police, etc., Pension Fund Commission*, 18 *N. J.* 137, 146 (1955); *Sherwood v. Bergen-Hackensack, etc., Authority*, 24 *N. J. Misc.* 48, 53–54 (*Sup. Ct.* 1946). With this distinction between a special and a general law in mind, the question is whether any appropriate person is excluded to which the law, but for its limitations, would apply. *Koons v. Board of Com'rs of Atlantic City*, 134 *N. J. L.* 329, 333 (*Sup. Ct.* 1946), affirmed per curiam 135 *N. J. L.* 204 (E. & A. 1947); *In re Freygang*, 46 *N. J. Super.* 14, 23 (App. Div. 1957), affirmed, 25 *N. J.* 357 (1957). [at 389]

There is no question as to the exclusion in fifth-class counties of the County of Ocean, and that for all time. The question is whether the exclusion of Ocean County is an arbitrary separation of some persons or places or things from others, upon which, but for such limitations the statute would operate. The test of a special law is the appropriateness of its provisions to the objects that it excludes. *Budd v. Hancock, supra.* We are concerned with the appropriateness of the exclusion or, stated another way, whether the legislation encompasses all the subjects which reasonably belong within the classification and does not exclude any which naturally belong therein.

As the court indicated, there was a paucity of testimony in the matter, at least insofar as supplying a basis upon which Ocean County in the fifth-class category, or Camden and Union Counties in the second-class category, should have been excluded. There was certainly no testimony which indicated any history of election difficulties unique to the counties included. Counsel for the board of freeholders argued that judicial notice could be taken of recent election irregularities alleged to have occurred in Atlantic County. Whatever the degree and kind of irregularities that did occur, they bore no relationship to the legislative purpose of the statute *vis à vis* the situation in Ocean County or in any other county of like population classification.

Defendant cites *McDonald v. Hudson Cty. Board of Freeholders,* 98 *N. J. L.* 386 (Sup. Ct. 1922), aff'd 99 *N. J. L.* 393 (E. & A. 1923), and *Meredith v. Mercer Cty. Board of Chosen Freeholders,* 117 *N. J. Super.* 379 (Law Div. 1970), aff'd 117 *N. J. Super.* 368 (App. Div. 1971) *aff'd* 59 *N. J.* 530 (1971). The court upheld the constitutionality of an earlier version of the same statute by attributing public concern on a state-wide basis as to the purity of the electoral process in heavily populated areas. The rationale is to be found in the unique size of the populations in those counties and a concern for a vote in those counties which would have a state-wide effect. The exclusion in that instance was warranted.

*Meredith, supra,* does not embrace the present proposition within its holding, nor was there any dicta or peripheral authority to be gleaned from that decision.

It is not necessary to consider the other grounds raised by plaintiff since the New Jersey Constitution is prohibitory of such legislation.

Order accordingly.